United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUSSELL H. FRYE,<br><br>Plaintiff,<br><br>v.<br><br>THE WINE LIBRARY, INC., a California Corporation; EDWARD GELSMAN, an individual; and CARL GELSMAN, an individual,<br><br>Defendants. | ) | Case No. 06-5399 SC<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DISCLOSURE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT; AND DENYING PLAINTIFF'S MOTION TO MODIFY CURRENT SCHEDULE |

## I. <u>INTRODUCTION</u>

This matter comes before the Court on the Motion to Strike Plaintiff's Expert Witness Disclosure ("Motion to Strike") and the Motion for Summary Judgment filed by the defendants The Wine Library, Inc. ("TWL"), Edward Gelsman, and Carl Gelsman (collectively "Defendants"), as well as the Motion for Leave to Amend Complaint ("Motion for Leave") and the Motion to Modify Current Schedule ("Motion to Modify") filed by plaintiff Russell Frye ("Plaintiff" or "Frye"). <u>See</u> Docket Nos. 36, 28, 29, 32. The parties filed Oppositions and Replies to all four motions. <u>See</u> Docket Nos. 38, 40, 42 45, 46, 49, 56, 59. For the following reasons, the Court DENIES Defendants' Motion to Strike; GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment; DENIES Plaintiff's Motion for Leave; and DENIES Plaintiff's Motion

United States District Court
For the Northern District of California

to Modify.

## II. BACKGROUND

The following facts are not disputed unless otherwise noted. Plaintiff is an avid collector of fine wines. Seeking to add to his collection, Plaintiff was informed by several friends that Defendants, as purveyors of fine wines, would likely be able to sell Plaintiff additional rare bottles. Compl. ¶ 1. Defendant TWL is a fine-wine retailer. Mot. for Summ. J. at 2. Defendant Edward Gelsman owns TWL and his brother, Carl Gelsman, is a full-time employee. Id. Casey Decl. Ex. C. E. Gelsman Dep. at 72, 86. Between June 2000 and February 2003 Plaintiff purchased between 53 and 60 bottles of fine wines at an aggregate purchase price Plaintiff estimates to be $565,000.[1] Compl. ¶ 11. Over this period, Defendants kept Plaintiff's credit card information and signature on file and, as Plaintiff would call in or fax orders for wine, Defendants would charge Plaintiff's credit card. Opp'n to Summ. J. at 14. Defendants would often hold the bottles that Plaintiff had purchased at TWL's facilities until Plaintiff arranged for refrigerated transportation to his storage facility. Mot. for Summ. J. at 2; Opp'n to Summ. J. at 13-14. The first shipment of bottles occurred on May 18, 2001, and included nine of the bottles at issue. Mot. for Summ. J. at 2; Casey Decl. ¶ 6,

---

[1] In his Complaint Plaintiff states that he purchased "53 or more bottles of wine . . . ." Compl. ¶ 11. In his Opposition to Summary Judgment, Plaintiff states "TWL sold Plaintiff Russell Frye 60 bottles . . . ." Opp'n to Summ. J. at 1. This apparent discrepancy is not relevant to the issues now before the Court.

United States District Court
For the Northern District of California

Ex. D. In April 2002 the next shipment of 30 bottles was sent to Plaintiff. Id. ¶ 7. Seven more of the bottles were shipped in December 2002. Id. ¶ 8. The parties' records do not reflect when the remaining bottles were shipped.[2] Id. ¶ 9.

By December 2005, Plaintiff had amassed a collection of approximately 10,000 bottles of fine wines. Compl. ¶ 12. Plaintiff then decided to sell a substantial portion of his collection at auction. Id. In preparation for auction, representatives of the auctioneer Sotheby's inspected the wines that Plaintiff intended to auction. Id. After inspecting the wines, the Sotheby's representatives advised Plaintiff that Sotheby's was unwilling to auction various bottles of Plaintiff's wine, including but not limited to most of the bottles Plaintiff had purchased from Defendants. Id. ¶ 13; Mot. for Summ. J. at 3. According to Sotheby's representatives, Sotheby's was unwilling to auction these wines because of questions regarding the wine's authenticity. Compl. ¶ 14; Mot. for Summ. J. at 3. In June 2006, Plaintiff hired his own wine expert who concluded that 34 of the bottles purchased from Defendants were counterfeit and 12 of the bottles purchased from Defendants were suspect. Compl. ¶ 4.

On August 31, 2006, Plaintiff filed his Complaint, alleging the following causes of action: (1) fraud; (2) constructive fraud; (3) negligent misrepresentation; (4) unlawful business practices;

---

[2] Although Defendants' counsel William Casey states in his declaration that "[t]he records produced in this action do not reflect the date(s) of delivery for the following seven bottles . . .," Casey Decl. ¶ 9, the list of wine that appears directly below this statement contains eight, not seven bottles. This discrepancy is also of no significance to the matters at hand.

United States District Court
For the Northern District of California

(5) fraudulent business practices; (6) breach of contract; and (7) breach of warranty. Trial is scheduled to begin January 14, 2008. See Civil Minutes, Docket No. 26.

## III. DISCUSSION

### A. Motion to Strike Plaintiff's Expert Witness

October 30, 2007, was the deadline for expert disclosures, pursuant to Federal Rule of Civil Procedure 26. See Mot. to Strike at 2. Defendants complied with the deadline and served Plaintiff with two expert reports. Defendant received no expert disclosures from Plaintiff and, on November 2, filed a Motion for Summary Judgment. Plaintiff then served Defendants with a Rule 26 Expert Disclosure and Expert Report on November 8, which identified Michael Egan as Plaintiff's expert and provided several of his reports. Id. at 3. Defendants now seek to have Plaintiff's Expert Report and Disclosure stricken, thereby precluding Plaintiff from using it at summary judgment and/or trial.

Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).

Defendants argue that the late disclosure was not harmless because Defendants relied in their summary judgment motion on

United States District Court
For the Northern District of California

Plaintiff's failure to proffer any evidence regarding the authenticity of the wine. Although Defendants did make such an argument in support of summary judgment, this argument was one of approximately five distinct theories for summary judgment. More importantly, Defendants have known that Plaintiff was relying on Mr. Egan and his reports since at least November 2, 2006, when Plaintiff's attorney sent Defendants a letter stating, in part:

> I also wanted to provide you with additional information regarding Plaintiff's experts in this case. As we have discussed both in our call and on many occasions previously, Michael Egan will be acting as Plaintiff's principal authenticity expert in this matter. We have already produced his reports and work in this case . . . . I am also, however, including an additional copy of these materials with this letter so that you have a copy of the relevant reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

Dunlap Decl. in Support of Opp'n to Summ. J. Ex. P. Defendants' argument that Plaintiff's late disclosure was not harmless is clearly contradicted by this letter. Not only were Defendants on notice of Mr. Egan's involvement with the case as Plaintiff's expert, but they also had numerous copies of his reports approximately a year before filing the present Motion to Strike.

Finally, Defendants' own Reply brief in this matter undercuts their position that Plaintiff's late disclosure was not harmless. Defendants state: "Mr. Egan's opinions are considered by the defense to be incomplete, lacking in foundation, speculative, biased and generally of minimal relevance to the issues in this case." Reply at 2 n.1. Thus, according to Defendants, Mr. Egan's participation in the case is hardly consequential. For these

reasons, the Court DENIES Defendants' Motion to Strike Plaintiff's Expert Witness Disclosure.

**B. Defendants' Motion for Summary Judgment**

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim. Anderson, 477 U.S. at 247-49. The Court addresses each of Defendants' arguments for summary judgment in turn.

**1. Fraud**

Defendants argue that summary judgment is appropriate on Plaintiff's first cause of action for fraud because Plaintiff "has adduced no evidence that TWL knew the falsity of [its] representations or intended to deceive Frye." Mot. at 4. According to Defendants, none of the evidence put forward by Plaintiff indicates that "TWL knowingly misrepresented the

authenticity of the wines it was selling with the intent to deceive Frye." Id.

Plaintiff has presented evidence indicating that Defendants told Plaintiff that Defendants had personal knowledge of both the quality of wine and the origins of the wine when, in fact, Defendants did not. For example, in his deposition, Edward Gelsman concedes that although he told Plaintiff that certain of the bottles were in fact in "mint condition," Gelsman had not seen the bottles, had no firsthand knowledge of whether this statement was true, and instead was merely repeating what a third party had told him. See Dunlap Decl. Ex. A Excerpts of E. Gelsman Dep. at 199-200. In another example, Edward Gelsman communicated to Plaintiff that he could secure for Plaintiff wine from "one of the world's greatest collection with the best provenance and condition I have ever seen in all my years in the wine business." Id. at 216. During questioning at the deposition, however, Edward Gelsman conceded that this statement was based on Gelsman's "speculation . . . that I previously sold wines from this collection and that these wines which were up for sale now were identified to me as being from the same collection that I previously sold wines from and had wines delivered to me an had delivered to my clients." Id. at 218. Gelsman conceded that he had not "seen the collection" but had rather "seen some bottles that had come out of the collection . . . ." Id. at 218-19. This evidence is sufficient to convince the Court that triable issues of material fact exist regarding Defendants' knowledge of the falsity of their representations and intention to deceive

United States District Court
For the Northern District of California

Plaintiff. Defendants' Motion for Summary Judgment on Plaintiff's fraud claim is DENIED.

**2. Constructive Fraud**

Defendants argue that Plaintiff's claim for constructive fraud fails as a matter of law because Plaintiff cannot establish, as he must under a constructive fraud claim, that there existed a confidential relationship between the parties.[3] "Constructive fraud is a unique species of fraud applicable only to a fiduciary relationship or confidential relationship." Dealertrack, Inc. v. Huber, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006) (internal quotation marks omitted).

Plaintiff argues that because Defendants held themselves out to Plaintiff as wine experts and because Plaintiff relied completely on Defendants' opinion when purchasing wines, often purchasing the wines without ever having seen the actual bottles, a confidential relationship existed. "A confidential relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind." Younan v. Equifax Inc., 111 Cal. App. 3d 498, 517 n.15 (Ct. App. 1980). "The existence of a confidential relationship is generally a question of fact." Tyler v. Children's Home Soc'y, 29 Cal. App. 4th 511, 549 (Ct. App. 1994). The Court finds that there are triable issues of material fact regarding whether a confidential

---

[3] Although Defendants also argue that Plaintiff has failed to demonstrate a fiduciary relationship, Plaintiff's claim for constructive fraud only alleges the existence of a confidential relationship. See Compl. ¶ 88. The Court therefore only addresses the issue of whether a confidential relationship existed.

United States District Court
For the Northern District of California

relationship existed between Plaintiff and Defendants. Defendants' Motion for Summary Judgment on this claim is DENIED.

**3. Statutes of Limitations**

Defendants argue that various statutes of limitations preclude Plaintiff from bringing various claims with respect to 39 of the bottles at issue. Each of the statutes of limitations asserted by Defendants is four years. Plaintiff does not dispute that 39 of the bottles were purchased by and delivered to Plaintiff before August 31, 2002.[4] Instead, Plaintiff argues that because he did not discover that the bottles were allegedly counterfeit until December 2005 and February and March 2006, when the bottles were inspected by Sotheby's in anticipation of a wine auction, all applicable statutes of limitations should be tolled. The Court addresses the parties' arguments in turn.

**a. California Commercial Code Section 2725**

Defendants argue that Plaintiff's breach of contract, breach of implied warranty and negligent misrepresentation claims with respect to the 39 bottles are barred by section 2725. Section 2725 states, in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . .
> (4) This section does not alter the law on tolling of the statute of limitations . . . .

[4] Plaintiff filed his Complaint on August 31, 2006.

United States District Court
For the Northern District of California

Cal. Com. Code § 2725.

Plaintiff argues that the delayed discovery doctrine is applicable to his claims and section 2725 therefore does not preclude his action. The delayed discovery rule "may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." April Enters. v. KTTV & Metromedia, Inc., 147 Cal. App. 3d 805, 832 (Ct. App. 1983). "The discovery rule protects those who are ignorant of their cause of action through no fault of their own." Id.

Although section 2725 clearly permits tolling of the statute of limitations, it is equally clear that delayed accrual is not permitted. The delayed discovery rule is exactly that--delayed accrual. See April Enters., 147 Cal. App. at 832 (stating that the delayed discovery doctrine "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue"). Thus, tolling of the four year statute of limitations would be permitted under section 2725 if, for example, there were some intervening act after the limitations period began accruing that prevented Plaintiff from filing his claim. See Cal. Com. Code § 2725(2). Section 2725, by its very language, however, prohibits the type of delayed accrual on which Plaintiff bases his delayed discovery argument. The authority cited by Plaintiff is inapposite as none of the cases involve section 2725. For these reasons, Plaintiff's breach of contract claim may only be asserted for those bottles of wine purchased less than four years before Plaintiff filed his Complaint, or, in other words, purchased after

United States District Court
For the Northern District of California

August 31, 2002. Defendants' Motion for Summary Judgment on this issue is GRANTED.

Defendants also argue that Plaintiff's breach of implied warranty claim is time-barred by section 2725. "Section 2725 of the California Uniform Commercial Code provides that an action for breach of warranty accrues on tender of delivery. Krieger v. Nick Alexander Imports, Inc., 234 Cal. App. 3d 205, 215 (Ct. App. 1991). "An exception is made where a warranty 'explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance.'" Id. (quoting Cal. Com. Code § 2725(2)). Defendants assume, and Plaintiff does not contest, that section 2725 applies to implied warranties in addition to express warranties.

"A defendant who moves for summary judgment bears the burden of negating the applicability of the discovery exception for accrual of an action on a future warranty." Kreiger, 234 Cal. App. at 216. The issue before the Court, then, is whether the implied warranty "explicitly extend[ed] to future performance of the goods . . . ." Cal. Com. Code § 2725(2). It would be a difficult stretch to find than anything 'implied' contained any 'explicit' provisions. Therefore, by the plain meaning of the language, the Court is bound to conclude that the implied warranty did not contain an explicit extension to future performance. Section 2725's exception to a claim for breach of warranty accruing at the time the breach was discovered is therefore not applicable and Plaintiff's breach of implied warranty claim is also barred as to the bottles purchased prior to August 31, 2002.

United States District Court
For the Northern District of California

Defendants' Motion for Summary Judgment is GRANTED on this issue.

Finally, Defendants argue that section 2725 precludes Plaintiff's negligent misrepresentation claim for all bottles purchased before August 31, 2002. Defendants assert that because the gravamen of Plaintiff's negligent misrepresentation claim is in fact to recover damages for Defendants' failure to provide goods conforming to the parties' sales contracts, the limitations period of section 2725 applies.

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. Hensler v. City of Glendale, 8 Cal. 4th 1, 22 (1994). "The nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." Id. at 23 (internal quotation marks and citations omitted).

Plaintiff argues that the gravamen of his negligent representation claim is in fraud, not contract. Fraud requires, in part, "knowledge of falsity (or 'scienter') [and] . . . intent to defraud . . . ." Lazar, 12 Cal. 4th at 638 (internal quotation marks omitted). Negligent misrepresentation, on the other hand, requires, in part, a "misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented . . . ." Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices, 207 Cal. App. 3d 1277, 1285 (Ct. App. 1989).

The issue, then, is whether the gravamen of Plaintiff's

negligent misrepresentation claim lies in fraud or contract. Defendants' have not demonstrated that Plaintiff's negligent misrepresentation claim sounds in contract. To the contrary, the negligent misrepresentation claim appears to be plead in conjunction with or as an alternative to Plaintiff's fraud claim.

Defendants cite a district court case from Massachusetts in support of their argument that Plaintiff's negligent misrepresentation claim should be barred by section 2725. In that case, however, the court based its ruling on its finding that "the plaintiff [was] really trying to avoid the statute of limitations on a breach of warranty claim." Wilson v. Hammer Holdings, 671 F. Supp. 94, 97-98 (D. Mass. 1997). As noted above, this Court interprets Plaintiff's negligent misrepresentation claim as a companion claim to Plaintiff's fraud claim, and not as an end-run around the limitations period for contracts. In addition, the plaintiff in Wilson, unlike the Plaintiff here, had not even raised a fraud claim. Id. at 95. Finally, the fact that this claim arises out of the same facts that give rise to Plaintiff's claims for breach of contract and breach of implied warranty does not, in this Court's view, necessarily conflate the negligent misrepresentation claim with the claims sounding in contract. For these reasons, Defendants' Motion for Summary Judgment on this issue is DENIED.

**b. California Business and Professions Code Section 17200**

Defendants argue that they are entitled to summary judgment with respect to 39 of the bottles on Plaintiff's Fourth and Fifth

United States District Court
For the Northern District of California

Causes of Action for unlawful and fraudulent business practices pursuant to Section 17200. Defendants argue that Plaintiff has failed to bring his claim within the four-year statue of limitations as provided for in Section 17208. Plaintiff apparently concedes that his section 17200 claims for these 39 bottles are governed by this four-year statute of limitations but argues that equitable tolling should be granted and that Plaintiff's business dealings with Defendants were ongoing and the section 17208 limitations period did not accrue until the date of the last sale.

**i. Equitable Tolling**

Both parties cite federal law for the standard for equitable tolling. The underlying statutes, however, are all California laws, as are the relevant statutes of limitations. Accordingly, the appropriate standard for equitable tolling is the standard under California, rather than federal, law. See, e.g., Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (stating that "[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent an of these laws is inconsistent with federal law"); Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (holding that if equitable tolling is proper, district court should apply California law because the plaintiff's claim was brought under a California statute).

Under California law, "application of the doctrine of equitable tolling requires timely notice, and lack of prejudice,

to the defendant, and reasonable and good faith conduct on the part of the plaintiff." Addison v. Cal., 21 Cal. 3d 313, 319 (1978).

Plaintiff has presented evidence that he acted reasonably and in good faith by relying on Defendants' assertions that the wine was genuine. In addition, there are triable issues of material fact regarding Plaintiff's expectation that it was not necessary to have the wine independently verified after purchasing it from Defendants. After all, it is likely that the very reason Plaintiff engaged in business with Defendants was because he believed that they were wine experts.

The prejudice that may be faced by Defendants is minimal. Defendants concede that only 39, rather than all, of the bottles are possibly barred by the limitations period of section 17208. Thus, Defendants are prepared to defend on the merits for the remaining bottles. It is hard to imagine how the addition of the 39 bottles will be overly prejudicial; the expert witnesses that each side intends to call will merely be required to discuss these additional bottles. Furthermore, the additional bottles in no way alter the parameters of Plaintiff's legal claims.[5]

Finally, "the equitable tolling doctrine fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court." Addison, 21 Cal. 3d at 321. Given the facts of the present case and the

---

[5] The factor of whether Plaintiff's notice was timely is largely irrelevant to the present case. In any event, Defendants have been on notice since the action was filed that Plaintiff's claims involved all of the bottles.

United States District Court
For the Northern District of California

policy driving California law, equitable tolling is appropriate. The Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's Fourth and Fifth Causes of Action.[6]

**4. Plaintiff's Claims Against Edward and Carl Gelsman**

Finally, Defendants seek summary judgment with respect to Plaintiff's first three causes of action against Edward and Carl Gelsman. As noted above, Edward and Carl Gelsman are the sole corporate officers of TWL. Edward is the president, director and sole shareholder and Carl is the treasurer/secretary of TWL. The Court finds that triable issues of fact exist with respect to the role of both of these individuals in Plaintiff's claims for fraud, constructive fraud and negligent misrepresentation. Defendants' Motion for Summary Judgment on the claims against Edward and Carl Gelsman is therefore DENIED.

**5. Authenticity of Wines at Issue**

The Court denied Defendants' Motion to Strike Plaintiff's Expert Witness Disclosure. The Court therefore considers Plaintiff's expert witness evidence in analyzing Defendants' Motion for Summary Judgment. Defendants' argument that Plaintiff has failed to put forth any evidence indicating that the wine purchased by Plaintiff from Defendants was counterfeit is therefore contradicted by Plaintiff's expert evidence. Defendants' Motion for Summary Judgment on this issue is DENIED.

---

[6] The Court need not reach Plaintiff's additional argument that the business dealings constituted an ongoing sales transaction, rather than numerous individual sales, and that the accrual date for the limitations period of section 17208 was in fact the date of the final purchase.

United States District Court
For the Northern District of California

**C. Plaintiff's Motion for Leave to Amend Complaint**

Plaintiff seeks leave to file an amended complaint adding three new parties as defendants. These parties, Royal Wine Merchants, LTD ("Royal"), Jeb Wine Trading LTD ("Jeb") and Bordeaux Wine Locators, Inc. ("Bordeaux"), are allegedly wine sellers who supplied Defendants with some of the wine that Plaintiff alleges is counterfeit. Plaintiff further alleges that recent discovery has indicated that "some of these vendors actually knew that the bottles they sold Defendant[s] . . . were counterfeit." Mot. for Leave at 2.

"In determining whether leave to amend is appropriate, the district court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks omitted).

Although "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the timing of the Plaintiff's Motion presents a significant hurdle for Plaintiff to overcome. See Schlacter-Jones v. Gen. Tel. of Cal., 936 F.2d 435, 443 (9th Cir. 1991) (abrogated on other grounds) (stating that the "timing of the motion [for leave to amend], [filed] after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave"). This is especially true given that Defendants identified at least two of these suppliers, Royal and Bordeaux, to Plaintiff as early as November 29, 2006, in Defendants' Rule 26 Initial Disclosure Statement. See Casey Decl. Ex. A. All three of the

United States District Court
For the Northern District of California

suppliers were again identified to Plaintiff in Defendants' Responses to Plaintiff's Special Interrogatories, served on January 25, 2007. See id. Ex. B. Moreover, as early as July 11, 2007, Plaintiff's counsel communicated to Defendants' counsel that Plaintiff was considering seeking to amend his Complaint to add Royal and Jeb as defendants. See id. ¶ 6. In light of this evidence, and given the advanced stage of the proceedings, Plaintiff's argument that this Motion for Leave could not have been filed any sooner is not persuasive.

In addition, contrary to Plaintiff's argument, Defendants would be prejudiced if Plaintiff were permitted to add new defendants. As Defendants rightly note, not only would new defendants seek discovery from the current Defendants but the current Defendants would also likely need to conduct their own discovery. The costs and delays associated with this additional discovery are not insignificant. The Court therefore finds that the factors of undue delay and prejudice to Defendants weigh strongly against granting leave to amend. The Court need not reach the other factors and DENIES Plaintiff's Motion for Leave to Amend Complaint.

**D. Plaintiff's Motion to Modify Current Schedule**

Plaintiff seeks to re-open discovery and set a new discovery deadline of August 1, 2008, and move the trial, scheduled to begin in just over a month on January 14, 2008, to October 6, 2008. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking

United States District Court
For the Northern District of California

the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking extension.'" Id. (citing Fed. R. Civ. P. 16).

For the reasons discussed in the previous section, Plaintiff has not demonstrated good cause. Plaintiff's Motion to Modify Current Schedule is therefore DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court holds the following:

1. Defendants' Motion to Strike Plaintiff's Expert Witness Disclosure is DENIED.
2. Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.
3. Plaintiff's Motion for Leave to Amend Complaint is DENIED.
4. Plaintiff's Motion to Modify Current Schedule is DENIED.

IT IS SO ORDERED.

Dated: December 11, 2007

UNITED STATES DISTRICT JUDGE